IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ADRIAN FRANK ANDRADE,

                    Petitioner,                No. CIV S-09-2270-TJB

          vs.

MATTHEW CATE,

                    Respondent.        ORDER, FINDINGS AND RECOMMENDATIONS

_____/

## I.  INTRODUCTION

Petitioner Adrian Frank Andrade is a state prisoner proceeding through counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  For the following reasons, it is recommended that the habeas petition be denied.

## II.  PROCEDURAL HISTORY

On June 13, 2006, a Sacramento County jury convicted Petitioner of:  (1) first degree murder, under Section 189 of the California Penal Code (count one); and (2) robbery, under Section 211 of the California Penal Code (count two).  Clerk's Tr. vol. 1, 278-79.

On July 21, 2006, the trial court sentenced Petitioner to a term of twenty five years to life, with the possibility of parole, on the murder conviction.  Clerk's Tr. vol. 2, 391.  The trial court sentenced Petitioner to three years on the robbery conviction, to run concurrently with the term

1

imposed for the murder conviction.  *Id.* at 389.

On August 7, 2006, Petitioner filed a notice of appeal in the Sacramento County Superior Court.  *Id.* at 393.  On April 6, 2007, Petitioner filed his opening brief in the California Court of Appeal, Third Appellate District.  *See* Appellant's Opening Brief.  On April 23, 2008, the California Court of Appeal issued a reasoned decision "modify[ing] to stay the sentence imposed on count two, the robbery count."  Resp't's Answer Ex. 1, at 52, ECF No. 11.[1]  In all other respects, the California Court of Appeal affirmed the judgment.  *Id.*

On June 2, 2008, Petitioner filed a petition for review in the California Supreme Court. *See* Pet. for Review.  On July 30, 2008, the California Supreme Court denied the petition without comment or citation.  *See* Order Denying Pet. for Review.

On August 17, 2009, Petitioner filed the instant federal habeas petition.  *See* Pet'r's Pet., ECF No. 1.  On April 23, 2010, Respondent filed an answer, *see* Resp't's Answer, to which Petitioner filed his traverse on July 6, 2010, *see* Pet'r's Reply, ECF No. 15.

### III.  CONSENT

On August 18, 2009, Petitioner consented, pursuant to 18 U.S.C. § 636(c)(1), to have a United States Magistrate Judge conduct all further proceedings, including the entry of final judgment.  *See* Pet'r's Consent, ECF No. 4.  Respondent, however, never responded to the issued "Order Re Consent or Request for Reassignment" by the previously assigned Magistrate Judge. *See* Order, Feb. 9, 2010, ECF No. 6.  This case is submitted for decision but is currently unassigned to a United States District Judge.  Since Respondent did not indicate his consent to jurisdiction by a United States Magistrate Judge, the Clerk of the Court shall assign this case to a

---

[1] The Case Management/Electronic Case Files (CM/ECF) docketing and file system is implemented, which allows the parties to electronically file pleadings and documents.  For pleadings or documents submitted in paper format, the filing is scanned and stored electronically into the CM/ECF system, except for lodged documents.  Each page of the electronic filing is numbered chronologically, whether or not the party numbered it.  If the filing is lengthy, the document is divided into parts.  Here, when a page number for a filed pleading or document is cited, the CM/ECF page number is used when available, which may not coincide with the page number that the parties used.

United States District Judge in accordance with the Court's general assignment plan.

## IV.  FACTUAL BACKGROUND[2]

On the evening of July 26, 2005, [Petitioner] and three others--Michael Montano, Christopher Moyo and Daniel Perez--met at a park, smoked marijuana, and discussed robbing a drug dealer of his merchandise.  The four eventually got into Moyo's car and drove to a Valero gas station and convenience store at the corner of Florin Road and French Road in Sacramento.

Montano provided the group with the name and phone number of Clifford Owens, a drug dealer Montano had done business with in the past.  They agreed to call Owens and lure him to the Valero station with an offer to purchase marijuana.  They further agreed that, after Owens arrived, [Petitioner] and Perez would approach Owens and take his marijuana without paying for it.

After the four arrived at the Valero station, they parked in three different locations in an effort to find the best spot to pull off their scheme.  In the last spot, they backed into the parking space in order to facilitate their flight after the robbery.  [Petitioner] and Perez got out of the car and [Petitioner] placed a call to Owens.  Using the fake name of Brandon, [Petitioner] arranged to meet with Owens at the Valero station to buy a quarter pound of marijuana for $900.

At the time, Owens was living with Harley White.  White had been a drug dealer and had introduced Owens to the illicit trade.  On the evening of July 26, White was at home with Jodi W., a neighbor, when Owens arrived to collect his supply of marijuana for the purported sale to [Petitioner].  Owens told them he was meeting someone named Brandon to sell him a quarter pound of marijuana.  White and Jodi W. watched Owens measure out the marijuana and put it into a plastic baggie.  He then put the plastic baggie into a paper grocery bag with paper handles.  Owens told White the purchaser had mentioned that he knew White.  Owens asked White if he knew the person or recognized the telephone number of the caller.  White did not recognize either.

White tried to talk Owens out of making the sale, because White did not recognize the name or number of the purchaser and thought it might be a setup.  However, Owens was behind on his bills and

---

[2] These facts are from the California Court of Appeal's opinion issued on April 23, 2008. *See* Resp't's Answer Ex. 1, at 2-5.  Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, a determination of fact by the state court is presumed to be correct unless Petitioner rebuts that presumption with clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see Moses v. Payne,* 555 F.3d 742, 746 n.1 (9th Cir. 2009); *Davis v. Woodford,* 384 F.3d 628, 638 (9th Cir. 2004).

needed the money.  White asked Owens what he would do if the purchaser pulled a gun on him.  Owens said the person would have to shoot him, because he would not give up the marijuana without being paid.

After Owens arrived at the Valero station, [Petitioner] and Perez approached his car.  Perez was wearing a red backpack.  Moyo and Montano remained behind in Moyo's car.

Gloria S. was walking to the Valero station at the time and noticed Owens standing by the open door of his car and reaching into a brown paper bag.  She saw two other men standing nearby.  One of the two men with Owens began walking toward the Valero station behind Gloria S.  However, she heard someone yell for him to come back and he turned around and returned to the others.  As Gloria S. reached the door of the convenience store, she heard several shots.

Wayne M. was also in the area at the time.  He heard the shots and, 10 or 15 seconds later, heard car doors shut and saw a white car leave the Valero parking lot in a hurry.  He wrote down a license number and later gave it to authorities.  This number was a close match to that registered to Moyo.

Moyo heard the gunshots three or four minutes after [Petitioner] and Perez walked over to Owens's car.  He started the car and waited.  [Petitioner] and Perez ran back to the car and the four drove away.  Moyo heard [Petitioner] say to Perez, "I think you killed him."  [Petitioner] was holding the bag of marijuana and, as they drove away, he split it among them.

Owens was found lying face-down on the ground with gunshot wounds to his head.  He was dead.  He was still holding the handles to the brown paper bag in his hand.  Nearby was a red backpack, containing 12 unspent rounds of .22 caliber ammunition and a prescription bottle containing .4 grams of marijuana.  Also at the scene were four .22 caliber shell casings.

[Petitioner] was interviewed by police the next day.  He claimed to have been with his girlfriend the day of the shooting and specifically denied being at the Valero station.  However, later he admitted he might have been at the station that day but claimed he was on his bike.  He denied having anything to do with the murder.

The next day, [Petitioner] was again interviewed by police.  This time, he admitted being at the Valero station with the others, but claimed he was only there to buy marijuana.  According to [Petitioner], he called Owens to setup the deal, but the marijuana turned out to be of poor quality and he walked away from the deal.  He said Owens got aggressive with them.  He further said that, as he was walking away, he heard gunshots.  He then ran to the car

1   and departed with the others.

2   [Petitioner] and the other three were charged with robbery and
    murder.  After a mistrial, Moyo entered into a plea deal.
3   [Petitioner] and Montano were tried together with separate juries.
    As noted above, [Petitioner] was convicted as charged.  However,
4   while finding [Petitioner] guilty of murder during the commission
    of a robbery, the jury found not true allegations that [Petitioner]
5   was armed with a firearm at the time of the offenses and that
    [Petitioner] was a major participant in the robbery who had acted
6   with reckless disregard for human life.  Similarly, as to the robbery,
    the jury found not true that [Petitioner] was armed with a firearm.

7

8                  V.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

9          An application for writ of habeas corpus by a person in custody under judgment of a state

10   court can be granted only for violations of the Constitution or laws of the United States.  28

11   U.S.C. § 2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v.*

12   *Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)).

13   This petition for writ of habeas corpus was filed after the effective date of, and thus is subject to,

14   the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Lindh v. Murphy*, 521

15   U.S. 320, 326 (1997); *see also Weaver v. Thompson*, 197 F.3d 359, 362 (9th Cir. 1999).  Under

16   AEDPA, federal habeas corpus relief also is not available for any claim decided on the merits in

17   state court proceedings unless the state court's adjudication of the claim:

18                  (1) resulted in a decision that was contrary to, or involved an
                    unreasonable application of, clearly established Federal law, as
19                  determined by the Supreme Court of the United States; or

20                  (2) resulted in a decision that was based on an unreasonable
                    determination of the facts in light of the evidence presented in the
21                  State court proceeding.

22   28 U.S.C. § 2254(d); *see also Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Williams v.*

23   *Taylor*, 529 U.S. 362, 402-03 (2000); *Lockhart v. Terhune*, 250 F.3d 1223, 1229 (9th Cir. 2001).

24          In applying AEDPA's standards, the federal court must "identify the state court decision

25   that is appropriate for our review."  *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005).

26   "The relevant state court determination for purposes of AEDPA review is the last reasoned state

                                              5

1   court decision." *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008) (citations omitted).

2   "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained

3   orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v.*

4   *Nunnemaker*, 501 U.S. 797, 803 (1991).  To the extent no such reasoned opinion exists, courts

5   must conduct an independent review of the record to determine whether the state court clearly

6   erred in its application of controlling federal law, and whether the state court's decision was

7   objectively unreasonable.  *Delgado v. Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000).  "The

8   question under AEDPA is not whether a federal court believes the state court's determination

9   was incorrect but whether that determination was unreasonable--a substantially higher

10  threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410).

11  "When it is clear, however, that the state court has not decided an issue, we review that question

12  *de novo*." *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006) (citing *Rompilla v. Beard*,

13  545 U.S. 374, 377 (2005)).

## VI.  CLAIMS FOR REVIEW

15      The petition for writ of habeas corpus sets forth four grounds for relief.  In ground one,

16  Petitioner argues "[t]he trial court erred by allowing into evidence hearsay statements made by

17  the deceased a short time before he was fatally shot."  Pet'r's Pet. 6.  In ground two, Petitioner

18  asserts "[t]he trial court erred by denying [P]etitioner's request to use the testimony of an expert

19  which denied the presentation of a meritorious defense."  *Id.* at 8.  In ground three, Petitioner

20  contends "[t]he trial court erred by not granting a continuance . . . ."  *Id.* at 9.  In ground four,

21  Petitioner claims there was prosecutorial misconduct."  *Id.* at 11.

22      A.  Ground One:  Admission of Hearsay Testimony

23      In ground one, Petitioner argues that the trial court violated Petitioner's due process rights

24  when it admitted hearsay statements of the victim.  In Petitioner's federal habeas petition,

25  Petitioner fails to specify which statements he challenges.  *See* Pet'r's Pet. 6.  However, in his

26  traverse, Petitioner specifies he challenges the testimony of two prosecution witnesses.  First,

1   Harley White testified that the victim stated "a person named 'Brandon' wanted to purchase a

2   quarter pound of marijuana for $900.00.  [White] also related that [the] victim said in response to

3   concerns about making the deal, that, '. . . [T]hey're going to have to shoot me 'cause I'm not

4   giving it up . . . .[']"  Pet'r's Traverse 15 (citations omitted).  Second, Jodi Wilson testified that

5   the victim stated "he was going to sell a quarter pound [of marijuana] for $900." *Id.*  "In

6   response to her concern as to what would happen if those he was to meet pulled a gun on him, he

7   replied that, '[T]hey would have to shoot me before they take my weed because I'm too much in

8   debt right now to come up with that money.'"  *Id.* (citations omitted).  In his traverse, Petitioner

9   argues these statements were improperly admitted into evidence because the victim's state of

10   mind was irrelevant and "may not be used to explain the conduct of the accused." *Id.* at 20.

11           1.  State Court Decision

12           Here, the state court decision appropriate for review is the California Court of Appeal's

13   decision because it is the "last reasoned state court decision" to address Petitioner's hearsay

14   claim. *Delgadillo*, 527 F.3d at 925 (citations omitted).  The California Court of Appeal rejected

15   Petitioner's claim, stating in relevant part:

16           [Petitioner] contends the trial court erred in admitting the hearsay
             testimony of Harley White and Jodi W. about what the victim told
17           them before he left home to meet [Petitioner] at the Valero station.
             In particular, [Petitioner] challenges the victim's statements that he
18           was meeting someone named Brandon to sell a quarter pound of
             marijuana for $900 and that if the buyers pulled a gun on him they
19           would have to shoot him because he was too much in debt to allow
             the marijuana to be taken without payment.
20
             In *People v. Alcalde* (1944) 24 Cal.2d 177 (*Alcalde*), the State
21           Supreme Court found admissible a decedent's statement that she
             intended to go out with a man named Frank, the defendant's
22           nickname, the night she was killed.  The court explained:
             "Elements essential to admissibility are that the declaration must
23           tend to prove the declarant's intention at the time it was made; it
             must have been made under circumstances which naturally give
24           verity to the utterance; it must be relevant to an issue in the case."
             (Id. at p. 187.)
25
             *Alcalde* was subsequently codified in Evidence Code section 1250.
26           (See *People v. Majors* (1998) 18 Cal.4th 385, 404.)  It reads:

7

"Subject to Section 1252 [concerning statements made under circumstances indicating a lack of trustworthiness], evidence of a statement of the declarant's then existing state of mind, emotion, or physical sensation (including a statement of intent, plan, motive, design, mental feeling, pain, or bodily health) is not made inadmissible by the hearsay rule when:  [¶] (1) The evidence is offered to prove the declarant's state of mind, emotion, or physical sensation at that time or at any other time when it is itself an issue in the action; or [¶] (2) The evidence is offered to prove or explain acts or conduct of the declarant."  (Evid. Code, § 1250, subd. (a).)

[Petitioner] argues the prosecution ostensibly introduced the evidence to prove the victim's state of mind but in fact did so to prove the truth of the matters stated, to wit, "that Mr. Owens was broke, needed to pay his bills, was to sell a quarter pound and not a quarter ounce of marijuana for $ 900.00, and the dealer would have to be shot to force him to give up his marijuana."  [Petitioner] further argues the prosecution introduced this evidence for the improper purpose of proving [Petitioner's] conduct at the time of the shooting.  The People counter that the evidence was properly admitted to prove the victim's intent to resist any attempt to take his marijuana by force, which in turn helped to prove this is what came to pass.  The People have the better argument.

[Petitioner] is correct that the evidence in question was not admissible to prove the victim was broke and needed to pay his bills.  Whether the victim was in fact broke and needed to pay his bills was not relevant to any issue in the case.  On the other hand, the victim's perception, i.e., his state of mind, that he was broke and needed to pay his bills was relevant.  Thus, it would not matter that, unknown to the victim, his great aunt had left him $1 million or his creditors had decided to forgive his debts.  The relevant issue was whether the victim thought he could not afford to have the marijuana stolen from him.

Likewise, whether the victim had been asked for a quarter pound of marijuana and was not willing to have that marijuana stolen from him without a fight were relevant to issues presented in the case.  In his second interview with police, [Petitioner] asserted he had called the victim to arrange the purchase of a quarter ounce of marijuana.  [Petitioner] further asserted he met with the victim at the Valero station but was dissatisfied with the quality of the marijuana and walked away from the deal.  Finally, [Petitioner] asserted the victim got aggressive and intimated that this aggressiveness led to the shots being fired.

The statements made by the victim to Harley White and Jodi W. tended to prove otherwise.  They suggested [Petitioner] used a false name and asked for a quarter pound of marijuana, both of which supported a conclusion that [Petitioner] intended a robbery rather than a purchase.  They further suggested the victim thought his

finances were such that he could not afford to have the marijuana stolen from him and would resist any such effort, thus further supporting the charge of robbery.  Finally, this evidence helped to prove that the shooting resulted not from the victim's aggressiveness but from the victim's resistance to efforts to rob him.

[Petitioner] contends it is improper to use evidence of the victim's state of mind to prove conduct of the defendant.  However, the State Supreme Court concluded otherwise in *People v. Majors*, *supra*, 18 Cal.4th at page 404, where it expressly rejected an argument that *Alcalde* was wrongly decided because it allowed a declarant's statements to be used to prove conduct of someone other than the declarant.  Evidence may be introduced to prove a declarant's state of mind, which in turn may tend to prove conduct of the declarant consistent with that state of mind.  Finally, conduct of the declarant consistent with his state of mind may be relevant as circumstantial evidence of another's conduct.  Here, evidence that the victim intended to resist a robbery and was killed is circumstantial evidence that he in fact attempted to resist a robbery and was killed for his efforts.

Resp't's Answer Ex. 1, at 5-9.

### 2. Legal Standard for Admission of Evidence Claim

"[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).  A state court evidentiary ruling admitting evidence, even if erroneous under state law, is not grounds for federal habeas relief unless the ruling renders the state proceeding so infused with unfairness as to violate due process.  *Id.* at 75; *see Payne v. Tennessee*, 501 U.S. 808, 825 (1991) (If evidence is "so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief."); *Windham v. Merkl*e, 163 F.3d 1092, 1103 (9th Cir. 1998); *Walters v. Maass*, 45 F.3d 1355, 1357 (9th Cir. 1995).  "Only if there are no permissible inferences the jury can draw from the evidence can its admission violate due process."  *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir. 1991); *see McKinney v. Rees*, 993 F.2d 1378, 1384 (9th Cir.) (as amended), *cert. denied*, 510 U.S. 1020 (1993); *see also McGuire*, 502 U.S. at 70 (finding, where challenged evidence is relevant to issue in case, its admission cannot be said to have violated defendant's due process rights).

1    The Supreme Court "ha[s] defined the category of infractions that violate fundamental

2    fairness very narrowly." *McGuire*, 502 U.S. at 72-73 (citation and internal quotation marks

3    omitted). A habeas petitioner "bears a heavy burden in showing a due process violation based on

4    an evidentiary decision." *Boyde v. Brown*, 404 F.3d 1159, 1172 (9th Cir. 2005). The Ninth

5    Circuit observed that, on the erroneous admission of prejudicial evidence, there is no clearly

6    established Supreme Court authority:

7            Under AEDPA, even clearly erroneous admissions of evidence that
             render a trial fundamentally unfair may not permit the grant of
8            federal habeas corpus relief if not forbidden by "clearly established
             federal law," as laid out by the Supreme Court. 28 U.S.C. §
9            2254(d). In cases where the Supreme Court has not adequately
             addressed a claim this court cannot use its own precedent to find a
10           state court ruling unreasonable. [*Carey v.*] *Musladin*, 549 U.S.
             [70,] 77, 127 S. Ct. 649, 166 L. Ed. 2d 482 [(2006)].

11
             The Supreme Court has made very few rulings regarding the
12           admission of evidence as a violation of due process. Although the
             Court has been clear that a writ should be issued when
13           constitutional errors have rendered the trial fundamentally unfair,
             *see Williams*, 529 U.S. at 375, 120 S. Ct. 1495, 146 L. Ed. 2d 389,
14           it has not yet made a clear ruling that admission of irrelevant or
             overtly prejudicial evidence constitutes a due process violation
15           sufficient to warrant issuance of the writ. Absent such "clearly
             established Federal law," we cannot conclude that the state court's
16           ruling was an "unreasonable application." *Musladin*, 549 U.S. at
             77, 127 S. Ct. 649, 166 L. Ed. 2d 482. Under the strict standards
17           of AEDPA, we are therefore without power to issue the writ on the
             basis of [the petitioner's] additional claims.

18

19   *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009).

20           3. Analysis

21           First, to the extent Petitioner claims that the trial court's rulings violated state evidentiary

22   law, his claim is not cognizable on federal habeas review. *See* 28 U.S.C. § 2254(a); *Estelle v.*

23   *McGuire*, 502 U.S. 62, 67-68 (1991) (reiterating "it is not the province of a federal habeas court

24   to reexamine state court determinations on state law questions"); *Smith v. Phillips*, 455 U.S. 209,

25   221 (1982) ("A federally issued writ of habeas corpus, of course, reaches only convictions

26   obtained in violation of some provision of the United States Constitution."); *Jammal*, 926 F.2d at

10

919 (Federal habeas courts "do not review questions of state evidence law.").

Second, to the extent Petitioner's claim presents a federal question, it fails because Petitioner cannot demonstrate that the state court's ruling was contrary to, or an unreasonable application of, clearly established federal law. *McGuire* held that, generally, admission of evidence "relevant to an issue in the case" does not violate due process. *McGuire*, 502 Cal. at 70. Here, Petitioner contends the victim's statements to White and Wilson were irrelevant. Pet'r's Traverse 20. The California Court of Appeal, however, reasonably concluded "the victim's perception, i.e., his state of mind, that he was broke and needed to pay his bills was relevant." Resp't's Answer Ex. 1, at 36. A trier of fact could reasonably infer the victim "thought his finances were such that he could not afford to have the marijuana stolen from him and would resist any effort, thus further supporting the charge of robbery." *Id.* at 37. This supports the prosecution's theory, and counters Petitioner's theory, that "the shooting resulted not from the victim's aggressiveness but from the victim's resistance to efforts to rob him." *Id.*

Petitioner also argues that "hearsay statements of victims[,] . . . when offered to prove the conduct of the *accused*, are not within the exception to the hearsay rule embodied in Evidence Code section 1250." Pet'r's Traverse 20 (emphasis added) (citing *People v. Noguera*, 4 Cal. 4th 599, 622, 15 Cal. Rptr. 2d 400, 842 P.2d 1160 (1992)). However, the California Court of Appeal reasonably agreed with the prosecution in that these statements were being used to prove *Petitioner*'s conduct. *See* Resp't's Answer Ex. 1, at 36. Rather, "evidence that the *victim* intended to resist a robbery and was killed is circumstantial evidence that *he* in fact attempted to resist a robbery and was killed for his efforts." *Id.* at 38 (emphasis added). Habeas relief is not warranted on this claim.

B. Ground Two: Exclusion of Expert Testimony

In ground two, Petitioner argues the trial court erred by denying Petitioner's request to use the testimony of an expert witness. Pet'r's Pet. 8. Petitioner contends he was to buy a small amount of marijuana but declined to purchase because the quality was poor. *Id.* Petitioner

asserts the seller became "angry and aggressive" because Petitioner declined the purchase, and

"the shooter acted in response to that aggressive behavior." *Id.*  Petitioner states, "The expert

would have testified to the quality of the narcotic and why the 'purported sale' was refused." *Id.*

       1. State Court Decision

      Here, the state court decision appropriate for review is the California Court of Appeal's

decision because it is the "last reasoned state court decision" to address Petitioner's expert

testimony claim.  *Delgadillo*, 527 F.3d at 925 (citations omitted).  The California Court of

Appeal rejected Petitioner's claim, stating in relevant part:

> As explained in the preceding section, one of [Petitioner's] theories
> at trial was that he had gone to the Valero station to purchase a
> quarter ounce of marijuana, found the marijuana to be of inferior
> quality, and walked away from the deal. According to [Petitioner],
> the shooting occurred after he walked away.

> In the midst of trial, [Petitioner] attempted to present the testimony
> of an expert witness that the marijuana taken from the victim was
> of inferior quality.  [Petitioner] explained that his expert had
> recently examined the marijuana and concluded it was "crap."  The
> prosecution responded that the marijuana had deteriorated with the
> passage of time and handling so that any examination now would
> not be probative.  The court too expressed a concern about the
> effect the passage of time would have on the quality of the
> marijuana.  Ultimately, the court excluded the testimony on the
> basis of Evidence Code section 352, explaining:

> "I am gonna rule adverse to the defense on this under 352.  I do
> feel based on the timing of this issue, based on the unanswered
> questions that we have, based on the fact that the people really
> have not made a case or stated their case on this being good grade
> marijuana, it's just marijuana.

> "It's quite unclear the extent it has, if at all, changed in its nature.  I
> do think it's reasonable to assume that through the handle [sic] of it
> as an item of evidence and to the extent it needed to be analyzed by
> the crime lab, carried back and forth to court and to the lab and to
> the police, that it is plant material.

> "I observed it here in court.  How can you compare it, perhaps, to
> the herbs I get at the grocery store?

> "After a period of time, they don't look anything like they did
> initially and therefore the expert, however well means [sic], ability
> to offer an opinion of great assistance as to how this looked over a

year ago is of such limited probative value and the risk of prejudice and--not really prejudice but just total confusion of the issues and inability to reach anything of assistance leads me to conclude under 352 it's appropriate to exclude it."

Evidence Code section 352 permits the exclusion of relevant evidence where "its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.)  We review a trial court order denying a motion to exclude evidence under Evidence Code section 352 for abuse of discretion.  (*People v. Williams* (1997) 16 Cal.4th 153, 213.)

Although a criminal defendant has a fundamental constitutional right to present a defense through the testimony of witnesses and the presentation of evidence (*Washington v. Texas* (1967) 388 U.S. 14, 19 [18 L.Ed.2d 1019, 1023]), "a state court's application of ordinary rules of evidence--including the rule stated in Evidence Code section 352--generally does not infringe upon this right." (*People v. Cornwell* (2005) 37 Cal.4th 50, 82.)

[Petitioner] contends the trial court erred in excluding the evidence under Evidence Code section 352, because the evidence would have been probative on two points:  (1) as support for his contention that, because the quality was bad, he walked away from the deal; and (2) as general support for his credibility.  [Petitioner] further argues the evidence would not have been confusing to the jury, because "[t]he marijuana was either good stuff or 'crap,' as related by the expert."

We agree with the trial court the proffered evidence had little probative value.  Besides the fact the expert would have rendered an opinion about the quality of the marijuana a year after the incident, the issue of the quality of the marijuana was peripheral at best.  [Petitioner] claimed he was buying a quarter ounce, yet the quantity brought to the scene was a quarter pound.  [Petitioner] claimed he walked away from the deal, but Gloria S. testified one of the two men with the victim walked away from the victim but was called back by the other and returned before shots were fired.

But even assuming some probative value, [Petitioner] misstates the confusing nature of the evidence.  He argues there is nothing confusing about whether the marijuana was good stuff or "crap." However, what is confusing is the effect of the passage of time and handling on the quality of the marijuana.  [Petitioner] made no offer of proof on this point.  This evidence also had the potential to create a mini-trial on the quality of the marijuana, with competing experts.  Under these circumstances, we cannot say the trial court abused its discretion in excluding the evidence.

1  Resp't's Answer Ex. 1, at 9-12.

2      2. Legal Standard for Exclusion of Evidence Claim

3         The Constitution guarantees each criminal defendant "a meaningful opportunity to

4  present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (internal quotation

5  marks omitted); *see Chambers v. Mississippi*, 410 U.S. 284, 294 (1973).  However, a defendant's

6  right to present relevant evidence in his defense "is not unlimited." *United States v. Scheffer*,

7  523 U.S. 303, 308 (1998) (holding right to present relevant evidence subject to reasonable

8  restrictions).  The United States Supreme Court has indicated its approval of "well-established

9  rules of evidence [that] permit trial judges to exclude evidence if its probative value is

10 outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential

11 to mislead the jury." *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006) (citations omitted).

12 Rules of evidence are constitutional unless they "infring[e] upon a weighty interest of the

13 accused and are arbitrary or disproportionate to the purposes they are designed to serve." *Id.* at

14 324 (citation and internal quotation marks omitted); *see Scheffer*, 523 U.S. at 315 (holding

15 exclusion pursuant to state evidentiary rule unconstitutional where it "significantly undermined

16 fundamental elements of the accused's defense").

17        "The Supreme Court has explained the foregoing principles in cases where defendants

18 have argued that state evidentiary rules, by their own terms, impinge upon their constitutional

19 right to present a complete defense." *See Moses v. Payne*, 543 F.3d 1090, 1102 (9th Cir. 2008).

20 It has not, however, squarely addressed whether a trial court's discretionary exclusion of

21 evidence pursuant to state rules of evidence that, as written, do not infringe on constitutional

22 rights, violates a defendant's constitutional rights.  *See id.* at 1102-04.  "[I]n the absence of a

23 Supreme Court decision that 'squarely addresses' an issue or gives a 'clear answer to the

24 question presented,' we cannot conclude that a state court's adjudication of that issue resulted in

25 a decision contrary to, or an unreasonable application of, Supreme Court precedent." *Id.* at 1104.

26 ///

3.  Analysis

First, to the extent Petitioner contends the trial court misapplied or erroneously excluded the proffered evidence under California law, Petitioner is not entitled to federal habeas relief on this state law claim.  *McGuire*, 502 U.S. at 67-68.  Incorrect state court evidentiary rulings cannot serve as a basis for habeas relief unless federal constitutional rights are affected.  *Lincoln v. Sunn*, 807 F.2d 805, 816 (9th Cir. 1987) (citation omitted).

Second, to the extent Petitioner's claim presents a federal question, it fails because Petitioner cannot demonstrate that the state court's ruling was contrary to, or an unreasonable application of, clearly established federal law.  Petitioner here does not challenge the constitutionality of the evidence rules upon which the state court's exclusion of the expert's testimony was predicated, i.e., Section 352 of the California Evidence Code.  Rather, Petitioner contends that the trial court improperly exercised its discretion under such rules.  However, Petitioner does not, and cannot, cite a Supreme Court case that squarely addresses the constitutionality of a trial court's discretionary exclusion of expert evidence pursuant to state rules, such as those involved here, which are constitutional as written.  *See Moses*, 543 F.3d at 1104.  The California Court of Appeal's resolution of Petitioner's claim was not contrary to, or an unreasonable application of, Supreme Court precedent.  *Id.* (citing *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008)).

Third, even if the trial court's exclusion of evidence amounts to constitutional error, Petitioner is not entitled to habeas relief because this error did not have a "substantial and injurious effect" upon the verdict and was harmless.  *See Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *see also Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (applying harmless error standard in federal habeas review of trial-type errors).  The evidence overwhelmingly connected Petitioner with the crime.  Moyo testified that Petitioner borrowed Moyo's cell phone and called the victim, who was "on his way" and "said he's bringing a QP, quarter pound[,]" of marijuana to sell for $900.  Rep.'s Tr. vol. 2, 329.  Moyo stated that Perez and Petitioner went to meet with

1  the victim; then, Moyo heard gunshots three to four minutes later.  *Id.* at 331; *see also id.* at 316

2  (showing Perez goes by the nickname, "Junior").  Perez and Petitioner "come running back" into

3  the car, and Petitioner, Perez, and Montano all tell Moyo to "get out of here."  *Id.* at 332.  Moyo

4  also testified that Petitioner said to Perez, "[U]hm, I think you killed him, he wasn't moving."

5  *Id.* at 332-33.  According to Moyo, Petitioner then split the marijuana in the car.  *Id.* at 333.

6          Petitioner's July 27, 2005, and July 28, 2005, interviews with the police were also

7  submitted into evidence and corroborated Moyo's testimony.  In his July 27, 2005, interview,

8  Petitioner denied being at the scene of the crime when the shooting occurred.  Rather, Petitioner

9  claimed he "was with [his] lady" and "was not involved."  Clerk's Tr. vol. 3, 795, 814; *see*

10  *People v. Avila*, 38 Cal. 4th 491, 563, 43 Cal. Rptr. 3d 1, 133 P.3d 1076 (2006) ("Defendant's

11  initial attempt to conceal from the police his involvement in the activities culminating in the

12  murders implied consciousness of guilt constituting corroborating evidence.").  In his July 28,

13  2005, interview, Petitioner placed himself at the crime scene, but stated he was there only to buy

14  a "quarter ounce" of marijuana.  Clerk's Tr. vol. 3, 865.  In the interview, Petitioner claimed the

15  marijuana "was no good, so he walked away" and heard gunshots.  *Id.*  Petitioner then left "[i]n

16  the same vehicle [he] got there."  *Id.* at 866.

17          Gloria S., however, testified one of the individuals with the victim walked away, but then

18  she "hear[d] somebody call him back."  Rep.'s Tr. vol. 1, 243-44.  The individual then "turn[ed]

19  around" and went "back in that direction," *id.* at 244, and after Gloria S. took "four or five more

20  steps," she heard "three pops."  *Id.*  Evidence probative of the marijuana's quality would neither

21  alter these facts nor support an inference that Petitioner was not involved in the crime.  Habeas

22  relief is not warranted on this claim.

23          C.  Ground Three:  Denial of Request for Juror Identifying Information

24          In ground three, Petitioner argues the trial court's denial of his motion for access to juror

25  identifying information, and for more time to query the jurors, violated his constitutional rights to

26  a fair trial and impartial jury.  *See* Pet'r's Traverse 32-33.  Respondent contends:  (1) the claim

alleges only a misinterpretation of California state law and presents no federal question; and (2) even if it did present a federal question, the denial of the request was not contrary to clearly established federal law. *See* Resp't's Answer 21-25.

        1. Background

On June 13, 2006, the jury returned guilty verdicts for first degree murder (count one) and robbery (count two). Rep's Tr. vol. 4, 1019-20, 1022-23. For count one, the jury found not true: (1) the allegation that Petitioner was armed with a firearm, under Section 12022(a)(1) of the California Penal Code; and (2) the special circumstance that Petitioner was a major participant in the robbery and acted with reckless disregard to human life. *Id.* at 1020. For count two, the jury found not true the allegation that Petitioner was armed with a firearm, under section 12022(a)(1). *Id.* at 1022-23. The matter was set for "imposition of judgment and sentence" on July 14, 2006, at 10:30 a.m. *Id.* at 1026.

On July 14, 2006, defense counsel stated he did not receive the probation report in a timely fashion. *Id.* at 1052-53. Defense counsel also requested to continue the imposition of judgment and sentence. *Id.* at 1053. Defense counsel's investigator obtained eight phone numbers and addresses of the jurors and was able to speak with two of them. *Id.* at 1054. Defense counsel recounted "there's six additional jurors that we're still seeking to speak with . . . ." *Id.* Defense counsel explained that "the threshold purpose" in "wanting to speak to [the jury]" was due to the "inconsistencies in the verdicts," where the jury found Petitioner guilty of the underlying offenses, but found not true the "principal armed allegation and the special circumstance of a murder occurring during the commission of a robbery." *Id.* at 1054-55. The trial court granted a one week continuance "for the purpose of allowing the defense the opportunity to more thoroughly and fully review the matters in the probation report . . . ." *Id.* at 1056-57.

On July 21, 2006, Petitioner filed a motion for release of juror's addresses and phone numbers. Clerk's Tr. vol. 2, 333. Petitioner attached interviews with three jurors as exhibits. *Id.*

at 345-50.  Juror K. H. advised "she was the holdout when the jurors came back hung."  *Id.* at

342.  Juror K. H. "was not sure if the robbery occurred while the victim was alive," and, at first,

"she did not feel there was enough evidence to prove robbery."  *Id.*  But, "[a]fter the judge

explained that they could only deliberate based on the evidence presented[,] not the lack of

evidence[,] [s]he made her decision that the robbery occurred before the murder based on the

evidence provided . . . ."  *Id.*  Juror K. H. "would not elaborate on what made her decide

suddenly . . . that the [S]tate had proven its case . . . ."  *Id.*  According to Juror K. H., "[a]ll the

jurors contributed and no one demanded that a verdict be reached."  *Id.*  Juror K. H. stated "[s]he

is comfortable that she made the right decision based on the evidence presented at trial."  *Id.*

Juror J. A. explained "one hold out [juror] could not get to the robbery.  [The holdout

juror] agreed there was a murder," but "[s]he questioned whether or not the marijuana was taken

before or after the victim's death."  *Id.* at 345.  Juror J. A. "did not believe any one person said

anything in particular to make the holdout change her mind."  *Id.*  Juror J. A. recounted that all

jurors "agreed that the special circumstance did not apply because [Petitioner] did not know

about the gun and could not expect that the victim would get shot."  *Id.*

Juror M. B. also explained "there was one juror who was undecided and one who felt

[Petitioner] was not guilty of the murder."  *Id.* at 347.  But, after the jury discussed the case for

an hour, the undecided juror "changed her mind and voted guilty."  *Id.*  Juror M. B. recounted

that "[a]fter deliberating for another day[,] the 'not guilty' juror said she had been married to a

drug dealer and had gone out on runs with him."  *Id.*  According to Juror M. B., the "not guilty"

juror stated, "It could have been her."  *Id.* (internal quotation marks omitted).  Juror M. B. "took

that to mean that she could have been killed."  *Id.*  Juror M. B. "went on to say that once this

juror stuck to the facts that were brought out in trial[,] she changed her mind and decided

[Petitioner] was guilty."  *Id.*  Juror M. B. added that "[t]he jury got along very well.  No one got

upset.  No one pushed anyone into making a decision."  *Id.*

On July 21, 2006, the trial court found that "the showing by the defense is not sufficient

1    to warrant granting the motion and it is denied."  Rep.'s Tr. vol. 4, 1071.

2            2.  State Court Decision

3            Here, the state court decision appropriate for review is the California Court of Appeal's

4    decision because it is the "last reasoned state court decision" to address Petitioner's jury

5    misconduct claim.  *Delgadillo*, 527 F.3d at 925 (citations omitted).  The California Court of

6    Appeal rejected Petitioner's claim, stating in relevant part:

7            Code of Civil Procedure section 206, subdivision (g), reads:
             "Pursuant to Section 237, a defendant or defendant's counsel may,
8            following the recording of a jury's verdict in a criminal proceeding,
             petition the court for access to personal juror identifying
9            information within the court's records necessary for the defendant
             to communicate with jurors for the purpose of developing a motion
10           for new trial or any other lawful purpose.  This information
             consists of jurors' names, addresses, and telephone numbers.  The
11           court shall consider all requests for personal juror identifying
             information pursuant to Section 237."

12
             Code of Civil Procedure section 237, in turn, reads in relevant part:
13           "(a) . . . [¶] (2) Upon the recording of a jury's verdict in a criminal
             jury proceeding, the court's record of personal juror identifying
14           information of trial jurors . . . consisting of names, addresses, and
             telephone numbers, shall be sealed until further order of the court
15           as provided by this section.  [¶] . . . [¶] (b) Any person may petition
             the court for access to these records.  The petition shall be
16           supported by a declaration that includes facts sufficient to establish
             good cause for the release of the juror's personal identifying
17           information.  The court shall set the matter for hearing if the
             petition and supporting declaration establish a prima facie showing
18           of good cause for the release of the personal juror identifying
             information, but shall not set the matter for hearing if there is a
19           showing on the record of facts that establish a compelling interest
             against disclosure. . . . [¶] (c) If a hearing is set pursuant to
20           subdivision (b), the petitioner shall provide notice of the petition
             and the time and place of the hearing at least 20 days prior to the
21           date of the hearing to the parties in the criminal action.  The court
             shall provide notice to each affected former juror . . . .  Any affected
22           former juror may appear in person, in writing, by telephone, or by
             counsel to protest the granting of the petition. . . . [¶] (d) After the
23           hearing, the records shall be made available as requested in the
             petition, unless a former juror's protest to the granting of the
24           petition is sustained. . . ."

25           The trial court concluded [Petitioner] failed to establish good cause
             for disclosure of the juror identifying information.  We agree.
26           [Petitioner's] showing established, as most, that one holdout juror

                                    19

was eventually convinced to change her mind after being directed to concentrate on the evidence presented, rather than what was not presented.  [Petitioner's] showing suggested that the not true finding on the special circumstance was not based on a compromise but on a conclusion that [Petitioner] was not aware Perez had brought a gun to the Valero station.  Finally, as to the holdout juror's revelation that she had been married to a drug dealer, [Petitioner] fails to establish that she failed to reveal this fact during voir dire.  The record does not include a transcript of the jury voir dire, and it was [Petitioner's] duty to provide this court with an adequate record to resolve the issues raised on appeal.  (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574; *People v. Parker* (1967) 255 Cal.App.2d 664, 673.)  At any rate, [Petitioner] ignores the fact that this was the only juror who, at least initially, voted in his favor.  Finally, that juror, like the others, showed leniency by giving [Petitioner] the benefit of the doubt that he did not know Perez was armed.

Review of a decision to deny a defendant's request for disclosure of juror identifying information is under the abuse of discretion standard.  (*People v. Jones* (1998) 17 Cal.4th 279, 317.)  Here, because [Petitioner] failed to establish good cause for disclosure of juror identifying information, and because his request for a continuance was premised on his having additional time to contact jurors, the trial court did not err in denying the request.

Resp't's Answer Ex. 1, at 43-45.

### 3.  Analysis

"Under California law, a defendant is entitled to a hearing to obtain juror identifying information only if he first presents a petition that establishes good cause for the information." *Feiger v. Hickman*, No. 05cv1754-L(PCL), 2008 WL 1787416, at *7 (S.D. Cal. Apr.16, 2008) (citing CAL. CIV. PROC. CODE § 237; *People v. Jefflo*, 63 Cal. App. 4th 1314, 1318-23 n.8, 74 Cal. Rptr. 2d 622 (1998)).  But the trial court does not need to set the matter for a hearing if the petition and declaration fail to establish a prima facie showing of good cause for the release of juror information, or if there exists "a compelling interest against disclosure." Cal. CIV. PROC. CODE § 237(b), (d).  "To establish good cause a defendant must set forth a sufficient showing to support a reasonable belief that jury misconduct occurred." *Feiger*, 2008 WL 1787416, at *7 (citing *People v. Jones*, 17 Cal. 4th 279, 317, 70 Cal. Rptr .2d 793, 949 P.2d 890 (1998); *Jefflo*, 63 Cal. App. 4th at 1321-22 n.8, 74 Cal. Rptr. 2d 622).

First, federal habeas corpus relief "does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see McGuire*, 502 U.S. at 67.  "[T]he availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution." *Dugger v. Adams*, 489 U.S. 401, 409 (1989).  "A federal court may not issue the writ [of habeas corpus] on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Second, Petitioner does not identify clearly established Supreme Court authority supporting the proposition that the right to a fair trial requires a state trial court to provide criminal defendants with juror identifying information or to hold a hearing on a motion for disclosure of such information.  *See, e.g.*, *Tracey v. Palmateer*, 341 F.3d 1037, 1045 (9th Cir. 2003) ("Clearly established federal law, as determined by the Supreme Court, does not require state or federal courts to hold a hearing every time a claim of juror bias [or misconduct] is raised."), *cert. denied*, 543 U.S. 864 (2004).  "[A]n evidentiary hearing is not mandated every time there is an allegation of jury misconduct or bias.  Rather, in determining whether a hearing must be held, the court must consider the content of the allegations, the seriousness of the alleged misconduct or bias, and the credibility of the source." *Id.* at 1044 (citing *United States v. Angulo*, 4 F.3d 843, 846 (9th Cir. 1993)); *United States v. Berry*, 627 F.2d 193, 197 (9th Cir. 1980) ("The decision to conduct a hearing into alleged jury misconduct and to determine its extent and nature is discretionary." (citing *United States v. Hendrix*, 549 F.2d 1225, 1227-28 (9th Cir. 1977))).

Here, the trial court found no evidence of jury misconduct to warrant a continuance, and the California Court of Appeal reasonably agreed, finding Petitioner "failed to establish good cause for disclosure of juror identifying information."  Resp't's Answer Ex. 1, at 45.  Petitioner's only evidence was his investigator's interview with a juror, who recounted that the holdout juror stated "she had been married to a drug dealer and had gone out on runs with him."  Clerk's Tr. vol. 2, 345.  The holdout juror stated, "It could have been her." *Id.* (internal quotation marks omitted).  However, nothing shows this holdout juror changed her mind, or exhibited any bias,

because of this experience.  "[Petitioner] incorrectly suggests misconduct occurs whenever the jury, though instructed to consider only the evidence before it, nonetheless discusses speculative, irrelevant, and/or erroneous facts or opinions.  Indeed, lay jurors are expected to bring their individual backgrounds and experiences to bear on the deliberative process."  *People v. Pride*, 3 Cal. 4th 195, 267-58, 10 Cal. Rptr. 2d 636, 833 P.2d 643 (1992).  Rather, another juror reported that "once this [holdout] juror stuck to the facts that were brought out in trial[,] she changed her mind and decided [Petitioner] was guilty."  Clerk's Tr. vol. 2, 347.  Petitioner is not entitled to relief on this claim.

D.  Ground Four:  Prosecutorial Misconduct

In ground four, Petitioner argues "[t]he prosecutor engaged in misconduct by arguing as facts testimony whose use was limited by the [c]ourt to show only the 'state of mind' of the victim."  Pet'r's Pet. 11.  In Petitioner's traverse, Petitioner contends certain statements in the prosecutor's closing arguments constituted misconduct because the prosecutor improperly used the hearsay statements of the victim to prove the conduct of the accused.  *See* Pet'r's Traverse 20.  Specifically, Petitioner challenges the prosecutor's arguments that:  (1) the victim "was going to do the deal because he needed to pay his bills;" (2) "[t]he deal was for a quarter pound of marijuana;" (3) the victim "was behind in his bills;" (4) the victim "was going to protect his pot;" (5) "[i]f the 'buyers' had a gun, they would have to shoot him;" and (6) the victim "was not going to willingly give up his weed or dope."  *Id.* at 20-21 (citations omitted).

1.  State Court Decision

Here, the state court decision appropriate for review is the California Court of Appeal's decision because it is the "last reasoned state court decision" to address Petitioner's prosecutorial misconduct claim.  *Delgadillo*, 527 F.3d at 925 (citations omitted).  The California Court of Appeal rejected Petitioner's claim, stating in relevant part:

> [Petitioner] contends the prosecution, in its argument to the jury, misrepresented the import of the testimony about what the victim said to Harley White and Jodi W. before driving to the Valero

station.  [Petitioner] argues the evidence was admitted over his hearsay objection for the limited purpose of establishing the victim's state of mind, yet the prosecutor argued the evidence for the truth of the matters asserted.  We reject [Petitioner's] contention for a number of reasons.

First, [Petitioner] does not even point out what statements by the prosecution he contends were improper.  He instead cites to eight pages from the reporter's transcript that contain portions of the prosecutor's opening and closing arguments.  It is not the job of this court to comb through those pages to find statements made by the prosecutor that may have misrepresented the import of the testimony of White and Jodi W.

Second, it does not appear [Petitioner] objected to any statements by the prosecutor that may have misrepresented the relevance of the White and Jodi W. testimony.  As a general rule, in order to preserve a claim of prosecutorial misconduct based on improper argument, the defense must make a timely objection and request an admonition.  (*People v. Frye* (1998) 18 Cal.4th 894, 969.)

Finally, even assuming [Petitioner] properly raised and preserved this argument for appeal, it is without merit.  The prosecution has a solemn obligation to protect a criminal defendant's constitutional right to a fair trial.  (*Berger v. United States* (1935) 295 U.S. 78, 88 [79 L.Ed. 1314, 1321].)  "Improper remarks by a prosecutor can '"so infect[] the trial with unfairness as to make the resulting conviction a denial of due process."'"  (*People v. Frye*, *supra*, 18 Cal.4th at p. 969.)  Nevertheless, a prosecutor has wide latitude in closing argument and may argue vigorously that the evidence shows the defendant is guilty of the crimes charged.  (*People v. Mincey* (1992) 2 Cal.4th 408, 447-448; *People v. Wharton* (1991) 53 Cal.3d 522, 567.)

The trial court admitted the testimony of Harley White and Jodi W. under the state of mind exception to the hearsay rule.  However, as explained above, that evidence was relevant to more than just the victim's state of mind.  It was also admissible as circumstantial evidence of conduct by the victim consistent with that state of mind and conduct by others, including [Petitioner].

In his initial argument, the prosecutor told the jury:  "Remember what he said to Jodi W[.] and Harley as he left his apartment carrying that bag of weed with the paper handles?  They're telling him don't do it, man, it sounds bad, don't do it, and he says I'm gonna do it, I need the money, I'm behind on my bills, I need the cash, and if they have a gun, well, they're just gonna have to shoot me."  Later, the prosecutor said:  "And it's almost like a prophecy.  They tell him don't do it, you're gonna get killed in essence, and he does it anyway and he gets killed."  Finally, the prosecutor argued:  "And the way Cliff Owens expressed himself to Jodi and Harley,

1   he's not gonna give it up unless they shoot me, so he's not gonna
    give it up without force.  That's the only way they're gonna get it is
2   with force, all right?"

3   There is nothing in the foregoing argument that misrepresented the
    proper use of the hearsay testimony.  The victim said he needed the
4   money, he was behind on his bills, and if anyone pulled a gun on
    him they would have to use it.  This evidence helped prove, as the
5   prosecutor argued, that the victim intended to resist any attempted
    robbery and did so when [Petitioner] and Perez tried to rob him.
6   The prosecutor did no more than argue that the evidence proved
    the victim did what he said he would do and was killed for it.
7   There was no prosecutorial misconduct.

8   Resp't's Answer Ex. 1, at 46-48.

9           2.  Analysis

10          A federal court will not review questions of federal law decided by a state court if the

11  decision also rests on a state law ground that is independent of the federal question and adequate

12  to support the judgment.  *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991).  In cases in which

13  a state prisoner has defaulted his federal claims in state court pursuant to an independent and

14  adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner

15  can demonstrate cause for the default and actual prejudice as a result of the alleged violation of

16  federal law, or demonstrate that failure to consider the claims will result in a fundamental

17  miscarriage of justice.  *Id.* at 750.  A petitioner must establish factual innocence to show that a

18  fundamental miscarriage of justice would result from application of procedural default.

19  *Gandarela v. Johnson*, 275 F.3d 744, 749-50 (9th Cir. 2002).

20          The California Court of Appeal held that Petitioner's failure to object at trial waived the

21  claim.  The Ninth Circuit has recognized and applied the California contemporaneous objection

22  rule in affirming denial of a federal petition on grounds of procedural default where there was a

23  complete failure to object at trial.  *See Inthavong v. Lamarque*, 420 F.3d 1055, 1058 (9th Cir.

24  2005).  There was a complete failure to object here, so this claim is procedurally defaulted.

25  Petitioner has not shown cause, prejudice, or a miscarriage of justice, and the failure to object

26  bars consideration of this claim.

Even assuming Petitioner preserved this argument for appeal, the California Court of Appeal reasonably determined that Petitioner's argument is without merit.  It is well settled that "[s]tatements of a [declarant's] then existing . . . state of mind -- may be offered under Section 1250, as under existing law, either to prove that fear when it is itself in issue or to prove or explain the [declarant's] subsequent conduct."  *People v. Lew*, 68 Cal. 2d 774, 781 n.3, 69 Cal. Rptr. 102, 441 P.2d 942 (1968).  Here, the California Court of Appeal reasonably found that the victim's then existing state of mind "helped prove, as the prosecutor argued, that the victim intended to resist any attempted robbery and did so when [Petitioner] and Perez tried to rob him." Resp't's Answer Ex. 1, at 48.  Petitioner is not entitled to habeas relief on this claim.

## VII.  CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that the Clerk of the Court shall ASSIGN this case to a United States District Judge in accordance with the Court's general assignment plan.

IT IS HEREBY RECOMMENDED that Petitioner's application for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).  In any objections he elects to file, Petitioner may address whether a certificate of appealability should be issued in the event he elects to file an appeal from the judgment in this case. *See* Rule 11(a), Federal Rules Governing Section 2254 Cases (district court must issue or

1   deny certificate of appealability when it enters final order adverse to applicant).

2

3

4

5   DATED:   March 7, 2011.

6

7   _____

8                               TIMOTHY J BOMMER
                                UNITED STATES MAGISTRATE JUDGE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26