IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ADRIAN FRANK ANDRADE,<br><br>               Petitioner,<br><br>          vs.<br><br>F. FOULK, Warden, High Desert State<br>Prison,[1]<br><br>              Respondent. | No. 2:09-cv-02270-JKS<br><br>ORDER<br>[Re: Motion at Docket No. 45]<br>and<br>MEMORANDUM DECISION |

Adrian Frank Andrade, a state prisoner now proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Andrade is in the custody of the California Department of Corrections and Rehabilitation and incarcerated at High Desert State Prison. Respondent has answered, and Andrade has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

On January 13, 2006, Andrade and co-defendants Michael Montano, Christopher Moyo and Daniel Perez were charged with murder (count 1) and robbery (count 2). It was alleged as to both counts that the defendants were armed with a firearm and that the murder in count 1 was committed during a robbery. It was further alleged as to the murder count that the defendants were minors at least 16 years old at the time of the offenses. Andrade pled not guilty and denied the special allegations. On direct appeal of his conviction, the California Court of Appeal described the following events underlying the charges against Andrade:

---

[1]      F. Foulk, Warden, High Desert State Prison, is substituted for Matthew Cate, former Secretary of the California Department of Corrections and Rehabilitation. Fed. R. Civ. P. 25(c); Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts; *Stanley v. Cal. Supreme Court*, 21 F.3d 359, 360 (9th Cir. 1994).

On the evening of July 26, 2005, [Andrade] and three others—Michael Montano, Christopher Moyo and Daniel Perez—met at a park, smoked marijuana, and discussed robbing a drug dealer of his merchandise. The four eventually got into Moyo's car and drove to a Valero gas station and convenience store at the corner of Florin Road and French Road in Sacramento.

Montano provided the group with the name and phone number of Clifford Owens, a drug dealer Montano had done business with in the past. They agreed to call Owens and lure him to the Valero station with an offer to purchase marijuana. They further agreed that, after Owens arrived, [Andrade] and Perez would approach Owens and take his marijuana without paying for it.

After the four arrived at the Valero station, they parked in three different locations in an effort to find the best spot to pull off their scheme. In the last spot, they backed into the parking space in order to facilitate their flight after the robbery. [Andrade] and Perez got out of the car and [Andrade] placed a call to Owens. Using the fake name of Brandon, [Andrade] arranged to meet with Owens at the Valero station to buy a quarter pound of marijuana for $900.

At the time, Owens was living with Harley White. White had been a drug dealer and had introduced Owens to the illicit trade. On the evening of July 26, White was at home with Jodi W., a neighbor, when Owens arrived to collect his supply of marijuana for the purported sale to [Andrade]. Owens told them he was meeting someone named Brandon to sell him a quarter pound of marijuana. White and Jodi W. watched Owens measure out the marijuana and put it into a plastic baggie. He then put the plastic baggie into a paper grocery bag with paper handles. Owens told White the purchaser had mentioned that he knew White. Owens asked White if he knew the person or recognized the telephone number of the caller. White did not recognize either.

White tried to talk Owens out of making the sale, because White did not recognize the name or number of the purchaser and thought it might be a setup. However, Owens was behind on his bills and needed the money. White asked Owens what he would do if the purchaser pulled a gun on him. Owens said the person would have to shoot him, because he would not give up the marijuana without being paid.

After Owens arrived at the Valero station, [Andrade] and Perez approached his car. Perez was wearing a red backpack. Moyo and Montano remained behind in Moyo's car.

Gloria S. was walking to the Valero station at the time and noticed Owens standing by the open door of his car and reaching into a brown paper bag. She saw two other men standing nearby. One of the two men with Owens began walking toward the Valero station behind Gloria S. However, she heard someone yell for him to come back and he turned around and returned to the others. As Gloria S. reached the door of the convenience store, she heard several shots.

Wayne M. was also in the area at the time. He heard the shots and, 10 or 15 seconds later, heard car doors shut and saw a white car leave the Valero parking lot in a hurry. He wrote down a license number and later gave it to authorities. This number was a close match to that registered to Moyo.

2

Moyo heard the gunshots three or four minutes after [Andrade] and Perez walked over to Owens's car. He started the car and waited. [Andrade] and Perez ran back to the car and the four drove away. Moyo heard [Andrade] say to Perez, "I think you killed him." [Andrade] was holding the bag of marijuana and, as they drove away, he split it among them.

Owens was found lying face-down on the ground with gunshot wounds to his head. He was dead. He was still holding the handles to the brown paper bag in his hand. Nearby was a red backpack, containing 12 unspent rounds of .22 caliber ammunition and a prescription bottle containing .4 grams of marijuana. Also at the scene were four .22 caliber shell casings.

[Andrade] was interviewed by police the next day. He claimed to have been with his girlfriend the day of the shooting and specifically denied being at the Valero station. However, later he admitted he might have been at the station that day but claimed he was on his bike. He denied having anything to do with the murder.

The next day, [Andrade] was again interviewed by police. This time, he admitted being at the Valero station with the others, but claimed he was only there to buy marijuana. According to [Andrade], he called Owens to setup the deal, but the marijuana turned out to be of poor quality and he walked away from the deal. He said Owens got aggressive with them. He further said that, as he was walking away, he heard gunshots. He then ran to the car and departed with the others.

*People v. Andrade*, No. C053346, 2008 WL 1813118, at *1-2 (Cal. Ct. App. Apr. 23, 2008).

After a mistrial, Moyo entered into a plea deal. Andrade and Montano were jointly tried before separate juries. At the conclusion of trial, Andrade's jury found him guilty of first-degree felony murder and robbery. However, the jury found not true the allegations tied to the murder conviction, which alleged that Andrade was armed with a firearm at the time of the offenses and that he was a major participant in the robbery who had acted with reckless disregard for human life. Similarly, as to the robbery, the jury found not true the allegation that Andrade was armed with a firearm. Shortly after trial, Andrade moved for the release of juror addresses and phone numbers. The motion was denied. The trial court subsequently sentenced Andrade to 25 years to life imprisonment on the murder conviction, plus 3 years' imprisonment on the robbery conviction to run concurrently with the sentence on the murder conviction.

Through counsel, Andrade appealed his conviction, arguing that: 1) the trial court erred by admitting the hearsay testimony of Harley White and Jodi W. about statements the victim made before leaving to meet Andrade at the Valero station; 2) the court improperly precluded Andrade from presenting the expert testimony of a witness who would opine that the marijuana taken from the victim was of inferior quality; 3) the court abused its discretion when it refused to grant a continuance and disclose juror identifying information, which Andrade sought to investigate potential juror misconduct; 4) the prosecutor committed misconduct during summation by misrepresenting the hearsay testimony about what the victim said to White and Jodi W.; and 5) the evidence was insufficient to sustain his conviction because the primary evidence came from Moyo, an accomplice whose testimony was not sufficiently corroborated. On April 23, 2008, the Court of Appeal issued a reasoned, unpublished opinion correcting the judgment to reflect the stay on the sentence imposed on count 2 but otherwise rejecting Andrade's claims and affirming his conviction in its entirety. *Andrade*, 2008 WL 1813118, at *10. Andrade petitioned for review in the California Supreme Court, which was summarily denied on July 30, 2008. Andrade's conviction became final on direct review 90 days later, when his time to file a petition for *certiorari* in the Supreme Court expired on October 30, 2008. *See Jiminez v. Quarterman*, 555 U.S. 113, 119 (2009); *Spitsyn v. Moore*, 345 F.3d 796, 798 (9th Cir. 2003).

Andrade timely filed a counseled Petition for a Writ of Habeas Corpus to this Court on August 17, 2009, raising the five claims he unsuccessfully raised before the state courts. Respondent opposed the Petition but addressed only the first four claims and, perhaps inadvertently, failed to respond to Andrade's claim that the accomplice testimony was not

sufficiently corroborated.  Counsel for Andrade apparently did not notice the omission and did

not address it in Andrade's Traverse, and indeed, the Traverse did not mention that claim at all

and instead argued only in support of the other four claims.  A previously-assigned magistrate

judge issued a report and recommendation dated March 8, 2011, ruling on only the four claims

addressed by Respondent and recommending that the Petition be denied.  Docket No. 19.

Counsel for Andrade did not file objections to the report.  On January 18, 2012, a previously-

assigned district court judge adopted the report in full, denied Andrade's Petition, and

determined that he was not entitled to a certificate of appealability.  Docket Nos. 20, 21.

Nearly a year and a half later, Andrade moved for reconsideration pursuant to Federal

Rule of Civil Procedure 60(b) in a *pro se* motion dated August 30, 2013.  Docket No. 22.  In that

submission, Andrade averred that counsel had not informed him of the denial and failed to file

objections to the magistrate's findings and recommendations and had thus effectively abandoned

him.  *Id.* at 2.  On September 24, 2013, a different district court judge considered the motion and

determined that neither the magistrate judge nor this Court had considered Andrade's

insufficiency of the evidence claim.  Docket No. 24 at 4.  The Court concluded that the omission

justified relief under Rule 60(b)(6); it thus vacated its order denying the Petition at Docket No.

20, declined to adopt the findings and recommendations at Docket No. 19, and ordered

Respondent to address the final claim.  Docket Nos. 24, 28.  Counsel for Andrade subsequently

withdrew from the case, and Andrade elected to proceed *pro se* after his request for the

appointment of counsel was denied.  Docket Nos. 39, 40, 43.  On October 15, 2015, the action

was reassigned to the undersigned judge.  Docket No. 47.  Briefing is now complete, and the

Petition is ripe for adjudication on all claims.  Andrade also moves for an evidentiary hearing as

to his claim that the trial court should have provided him juror identifying information, which is also before this Court for consideration.  Docket No. 45.

## II. GROUNDS/CLAIMS

In his Petition before this Court, Andrade raises five grounds for relief.  First, he argues that the murder victim's statements to Harley White and Jodi W. constituted inadmissible hearsay.  He next contends that the trial court erred in precluding him from offering expert testimony on the quality of the victim's marijuana.  Third, he asserts that the trial court should have disclosed juror information and allowed him more time to investigate possible juror misconduct; he additionally requests an evidentiary hearing as to this claim.  Andrade further avers that the prosecutor committed misconduct in summation with respect to his arguments about the victim's statements to White and Jodi W.  Finally, Andrade argues that the evidence was insufficient to sustain his conviction because it did not adequately corroborate the accomplice testimony presented.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that

are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). Here, the only decision on

7

Simmons' collateral review claims was a summary denial by the California Supreme Court on habeas review, which is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A.    <u>Admission of Victim's Statements</u> (Grounds One and Four)

Andrade first makes two arguments regarding the admission of testimony of Harley White and Jodi W. about what the victim told them before he met Andrade at the Valero station. First, Andrade challenges as inadmissible hearsay the victim's statements that he was meeting someone named Brandon to sell a quarter pound of marijuana for $900 and that, if the buyers pulled a gun on him, they would have to shoot him because he was in too much debt to allow the marijuana to be taken without payment. He additionally argues that the prosecutor's statements during summation regarding the hearsay testimony constituted misconduct. These arguments will be addressed in turn.

1.    *Hearsay*

The Court of Appeal rejected Andrade's claim that the testimony was inadmissible as follows:

> [Andrade] argues the prosecution ostensibly introduced the evidence to prove the victim's state of mind but in fact did so to prove the truth of the matters stated, to wit, "that Mr. Owens was broke, needed to pay his bills, was to sell a quarter pound and not a quarter ounce of marijuana for $900.00, and the dealer would have to be shot to force him to give up his marijuana." [Andrade] further argues the prosecution introduced this evidence for the improper purpose of proving [Andrade's] conduct at the time of the shooting. The People counter that the evidence was properly admitted to prove the

victim's intent to resist any attempt to take his marijuana by force, which in turn helped to prove this is what came to pass.  The People have the better argument.

[Andrade] is correct that the evidence in question was not admissible to prove the victim was broke and needed to pay his bills.  Whether the victim was in fact broke and needed to pay his bills was not relevant to any issue in the case.  On the other hand, the victim's perception, i.e., his state of mind, that he was broke and needed to pay his bills was relevant.  Thus, it would not matter that, unknown to the victim, his great aunt had left him $1 million or his creditors had decided to forgive his debts.  The relevant issue was whether the victim thought he could not afford to have the marijuana stolen from him.

Likewise, whether the victim had been asked for a quarter pound of marijuana and was not willing to have that marijuana stolen from him without a fight were relevant to issues presented in the case.  In his second interview with police, [Andrade] asserted he had called the victim to arrange the purchase of a quarter ounce of marijuana.  [Andrade] further asserted he met with the victim at the Valero station but was dissatisfied with the quality of the marijuana and walked away from the deal.  Finally, [Andrade] asserted the victim got aggressive and intimated that this aggressiveness led to the shots being fired.

The statements made by the victim to Harley White and Jodi W. tended to prove otherwise.  They suggested [Andrade] used a false name and asked for a quarter pound of marijuana, both of which supported a conclusion that [Andrade] intended a robbery rather than a purchase.  They further suggested the victim thought his finances were such that he could not afford to have the marijuana stolen from him and would resist any such effort, thus further supporting the charge of robbery.  Finally, this evidence helped to prove that the shooting resulted not from the victim's aggressiveness but from the victim's resistance to efforts to rob him.

[Andrade] contends it is improper to use evidence of the victim's state of mind to prove conduct of the defendant.  However, the State Supreme Court concluded otherwise in *People v. Majors*, supra, 18 Cal. 4th at page 404, where it expressly rejected an argument that *Alcalde* was wrongly decided because it allowed a declarant's statements to be used to prove conduct of someone other than the declarant.  Evidence may be introduced to prove a declarant's state of mind, which in turn may tend to prove conduct of the declarant consistent with that state of mind.  Finally, conduct of the declarant consistent with his state of mind may be relevant as circumstantial evidence of another's conduct.  Here, evidence that the victim intended to resist a robbery and was killed is circumstantial evidence that he in fact attempted to resist a robbery and was killed for his efforts.

*Andrade*, 2008 WL 1813118, at *3-4.

The Supreme Court has acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts."  *Crane v. Kentucky*, 476 U.S. 683,

689 (1986).  The Supreme Court has further made clear that federal habeas power does not allow

granting relief on the basis of a belief that the state trial court incorrectly interpreted the state

evidence code in ruling on the admissibility of evidence.  *Estelle*, 502 U.S. at 72 (citing *Cupp v.*

*Naughten*, 414 U.S. 141, 147 (1973); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Donnelly v.*

*DeChristoforo*, 416 U.S. 637, 643 (1974)).

The erroneous admission of evidence does not provide a basis for federal habeas relief

unless it rendered the trial fundamentally unfair in violation of due process.  *Holley v.*

*Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009).  Evidence violates due process only if "there

are no permissible inferences the jury may draw from the evidence."  *Jammal v. Van de Kamp*,

926 F.2d 918, 920 (9th Cir. 1991) (emphasis omitted).  A writ of habeas corpus will be granted

for an erroneous admission of evidence "only where the 'testimony is almost entirely unreliable

and . . . the factfinder and the adversary system will not be competent to uncover, recognize, and

take due account of its shortcomings.'"  *Mancuso v. Olivarez*, 292 F.3d 939, 956 (9th Cir. 2002)

(quoting *Barefoot v. Estelle*, 463 U.S. 880, 899 (1983)).

Under these standards, to the extent that Andrade's claim is based upon an alleged

violation of California Evidence Code § 1250, such claim is not cognizable on federal habeas

review.  *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state

court's interpretation of state law, including one announced on direct appeal of the challenged

conviction, binds a federal court sitting in habeas corpus."); *see also Langford v. Day*, 110 F.3d

1380, 1389 (9th Cir. 1997) ("We accept a state court's interpretation of state law, . . . and alleged

errors in the application of state law are not cognizable in federal habeas corpus.").  Whether a

statement constitutes hearsay is a question of state law that this court may not revisit.  *See Lewis*

10

*v. Jeffers*, 497 U.S. 764, 780 (1990); *cf. Lilly v. Virginia*, 527 U.S. 116, 125 (1999) (plurality

opinion) (whether statements qualified as statements against penal interest for purposes of state

hearsay rule is a "matter of state law").

Moreover, Andrade cannot show that the state court's ruling was contrary to, or an

unreasonable application of, clearly established federal law.  Andrade appears to argue the

admission violated his due process rights because the testimony was irrelevant.  But as laid out

in that court's thorough analysis of this claim, the Court of Appeal reasonably concluded

otherwise.  *See Estelle*, 502 U.S. at 70 (holding that, as a general matter, the admission of

evidence "relevant to an issue in the case" does not violate due process).  Indeed, even if the

state court's conclusion was incorrect, such erroneous conclusion would still not warrant relief

as the United States Supreme Court "has not yet made a clear ruling that admission of irrelevant

or overtly prejudicial evidence constitutes a due process violation."  *Holley*, 568 F.3d at 1101;

*see Carey v. Musladin*, 549 U.S. 70, 76 (2006) (where Supreme Court precedent gives no clear

answer to question presented, "it cannot be said that the state court 'unreasonab[ly] appli[ed]

clearly established Federal law'").

Nor can Andrade show that the admission violated his right to confrontation.  The Sixth

Amendment to the United States Constitution, made applicable to the states by the Fourteenth

Amendment, provides in part that, "In all criminal prosecutions, the accused shall enjoy the right

. . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  However, the

Confrontation Clause applies only to "testimonial" statements, which generally refers to "a

solemn declaration or affirmation made for the purpose of establishing or proving some fact."

*See Crawford v. Washington*, 541 U.S. 36, 50-51 (2004).  Although the Supreme Court has not

articulated a comprehensive definition of testimonial hearsay, it has concluded that statements to

friends and neighbors are not testimonial.  *See Giles v. California*, 554 U.S. 353, 376 (2008);

*Crawford*, 541 U.S. at 51 (Confrontation Clause addresses formal statements of a declarant to

government officers because that person "bears testimony in a sense that a person who makes a

casual remark to an acquaintance does not"); *see also Delgadillo v. Woodford*, 527 F.3d 919, 927

(9th Cir. 2008) (finding that "the state court's implicit conclusion that [the victim's] remarks to

her coworkers did not implicate [the petitioner's] Sixth Amendment rights of confrontation" was

not contrary to, nor an unreasonable application of, *Crawford*).  Thus, the victim's statements did

not implicate Andrade's right to confrontation, and Andrade cannot show either a confrontation

or due process violation.

2.   *Prosecutorial misconduct*

In a separate but related claim, Andrade argues that the prosecutor committed misconduct

during summation by misrepresenting the testimony about what the victim said to Harley White

and Jodi W.  Namely, Andrade contends that, although the evidence was admitted for the limited

purpose of establishing the victim's state of mind, the prosecution referred to it for the truth of

the matters asserted.

As an initial matter, the Court of Appeal rejected this claim due to a failure to object at

trial.  Consequently, because the state appellate court found Andrade's claim forfeited under

California's contemporaneous objection rule, the claim is procedurally defaulted from federal

habeas review.  *Coleman*, 501 U.S. at 729-30 (a federal court will not review a claim if the state

court's rejection of the claim rests on a state law ground that is independent of the federal

question and adequate to support the judgment).  The Ninth Circuit has repeatedly recognized

12

and applied the California contemporaneous objection rule in affirming denial of a federal

habeas petition on grounds of procedural default where there was a complete failure to object at

trial.  *See, e.g.*, *Inthavong v. Lamarque*, 420 F.3d 1055, 1058 (9th Cir. 2005); *Paulino v. Castro*,

371 F.3d 1083, 1092-93 (9th Cir. 2004).

And even if the claim were not procedurally defaulted, Andrade would not be entitled to

relief on it.  Federal habeas review of prosecutorial misconduct claims is limited to the narrow

issue of whether the alleged misconduct violated due process.  *See Darden v. Wainwright*, 477

U.S. 168, 181 (1986).  To prevail on such a claim, a petitioner must show that the prosecutor's

conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due

process."  *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).  Moreover, "[o]n habeas

review, constitutional errors of the 'trial type,' including prosecutorial misconduct, warrant relief

only if they 'had substantial and injurious effect or influence in determining the jury's verdict.'"

*Wood v. Ryan*, 693 F.3d 1104, 1113 (9th Cir. 2012) (quoting *Brecht*, 507 U.S. at 637-38 (1993)).

Here, the Court of Appeal's rejection of Andrade's prosecutorial misconduct claim was

not unreasonable.  As the state court explained:

> The trial court admitted the testimony of Harley White and Jodi W. under the
> state of mind exception to the hearsay rule.  However, as explained above, that evidence
> was relevant to more than just the victim's state of mind.  It was also admissible as
> circumstantial evidence of conduct by the victim consistent with that state of mind and
> conduct by others, including [Andrade].
>
> In his initial argument, the prosecutor told the jury: "Remember what he said to
> Jodi W[.] and Harley as he left his apartment carrying that bag of weed with the paper
> handles?  They're telling him don't do it, man, it sounds bad, don't do it, and he says I'm
> gonna do it, I need the money, I'm behind on my bills, I need the cash, and if they have a
> gun, well, they're just gonna have to shoot me."  Later, the prosecutor said: "And it's
> almost like a prophecy.  They tell him don't do it, you're gonna get killed in essence, and
> he does it anyway and he gets killed."  Finally, the prosecutor argued: "And the way Cliff
> Owens expressed himself to Jodi and Harley, he's not gonna give it up unless they shoot

me, so he's not gonna give it up without force.  That's the only way they're gonna get it is with force, all right?"

There is nothing in the foregoing argument that misrepresented the proper use of the hearsay testimony.  The victim said he needed the money, he was behind on his bills, and if anyone pulled a gun on him they would have to use it.  This evidence helped prove, as the prosecutor argued, that the victim intended to resist any attempted robbery and did so when [Andrade] and Perez tried to rob him.  The prosecutor did no more than argue that the evidence proved the victim did what he said he would do and was killed for it. There was no prosecutorial misconduct.

*Andrade*, 2008 WL 1813118, at *8-9 (citations omitted).

For the reasons thoroughly explained by the state appellate court, the prosecutor's comments were not improper or misleading because "[t]his evidence helped prove, as the prosecutor argued, that the victim intended to resist any attempted robbery and did so when [Andrade] and Perez tried to rob him."  *Id.* at *9.  The state court's decision was thus not an unreasonable application of Supreme Court authority.  Accordingly, Andrade is not entitled to relief on this claim either.

B.      Preclusion of Expert Testimony (Ground Two)

Andrade next argues that he was denied his right to present a defense when the court denied his request to present expert testimony that the marijuana the victim wanted to sell was of poor quality.  The Court of Appeal recounted the underlying facts supporting Andrade's claims:

[O]ne of [Andrade's] theories at trial was that he had gone to the Valero station to purchase a quarter ounce of marijuana, found the marijuana to be of inferior quality, and walked away from the deal.  According to [Andrade], the shooting occurred after he walked away.

In the midst of trial, [Andrade] attempted to present the testimony of an expert witness that the marijuana taken from the victim was of inferior quality.  [Andrade] explained that his expert had recently examined the marijuana and concluded it was "crap."  The prosecution responded that the marijuana had deteriorated with the passage of time and handling so that any examination now would not be probative.  The court too expressed a concern about the effect the passage of time would have on the quality of the marijuana.  Ultimately, the court excluded the testimony on the basis of Evidence Code section 352, explaining:

"I am gonna rule adverse to the defense on this under 352. I do feel based on the timing of this issue, based on the unanswered questions that we have, based on the fact that the people really have not made a case or stated their case on this being good grade marijuana, it's just marijuana.

"It's quite unclear the extent it has, if at all, changed in its nature. I do think it's reasonable to assume that through the handle [sic] of it as an item of evidence and to the extent it needed to be analyzed by the crime lab, carried back and forth to court and to the lab and to the police, that it is plant material.

"I observed it here in court. How can you compare it, perhaps, to the herbs I get at the grocery store?

"After a period of time, they don't look anything like they did initially and therefore the expert, however well means [sic], ability to offer an opinion of great assistance as to how this looked over a year ago is of such limited probative value and the risk of prejudice and-not really prejudice but just total confusion of the issues and inability to reach anything of assistance leads me to conclude under 352 it's appropriate to exclude it."

*Andrade*, 2008 WL 1813118, at *4-5.

It is well settled that, under the Sixth Amendment, an accused has the right to present witnesses, testimony and other evidence in his defense. *See Washington v. Texas*, 388 U.S. 14, 19 (1967). However, "[t]he accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor v. Illinois*, 484 U.S. 400, 409-10 (1988). States have considerable latitude under the Constitution to establish rules excluding evidence from criminal trials. *Holmes v. S. Carolina*, 547 U.S. 319, 324 (2006). "Thus, a trial judge may exclude or limit evidence to prevent excessive consumption of time, undue prejudice, confusion of the issues, or misleading the jury. The trial judge enjoys broad latitude in this regard, so long as the rulings are not arbitrary or disproportionate." *Menendez v. Terhune*, 422 F.3d 1012, 1033 (9th Cir. 2005) (citations omitted); *see Montana v. Egelhoff*, 518 U.S. 37, 42-43 (1996) (holding due process rights are not violated by exclusion of relevant evidence where probative value is outweighed by danger of prejudice or confusion).

15

Federal Rule of Evidence 403, the federal counterpart to California Evidence Code section 352, permits the exclusion of evidence if its probative value is "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  "A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules.  Assessing the probative value of [the proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . ."  *United States v. Abel,* 469 U.S. 45, 54 (1984); *see Boyd v. City and Cnty. of San Francisco*, 576 F.3d 938, 948 (9th Cir. 2009).  California employs a similar rule.  *See People v. Harris*, 118 P.3d 545, 565 (Cal. 2005) ("We review for abuse of discretion a trial court's rulings on the admissibility of evidence.").

Under these guidelines, this Court cannot find that the trial court's denial of Andrade's request was an abuse of discretion or unreasonable or contrary to federal law.  As the Court of Appeal persuasively reasoned in affirming the trial court's denial:

> [T]he proffered evidence had little probative value.  Besides the fact the expert would have rendered an opinion about the quality of the marijuana a year after the incident, the issue of the quality of the marijuana was peripheral at best.  [Andrade] claimed he was buying a quarter ounce, yet the quantity brought to the scene was a quarter pound.  [Andrade] claimed he walked away from the deal, but Gloria S. testified one of the two men with the victim walked away from the victim but was called back by the other and returned before shots were fired.
> But even assuming some probative value, [Andrade] misstates the confusing nature of the evidence.  He argues there is nothing confusing about whether the marijuana was good stuff or "crap."  However, what is confusing is the effect of the passage of time and handling on the quality of the marijuana.  [Andrade] made no offer of proof on this point.  This evidence also had the potential to create a mini-trial on the quality of the marijuana, with competing experts.  Under these circumstances, we cannot say the trial court abused its discretion in excluding the evidence.

*Andrade*, 2008 WL 1813118, at *4-6 (citations omitted).

16

The Court agrees that the proffered evidence was, at best, minimally relevant and of limited probative value.  *See Perry v. Rushen*, 713 F.2d 1447, 1453 (9th Cir. 1983) ("Evidence of little importance, whether merely cumulative or of little probative value, will almost never outweigh the state interest in efficient judicial process.").  Moreover, the trial court acted well within its discretion and within the bounds of the Confrontation Clause in determining that the limited probative value of the evidence was outweighed by the undue consumption of time that the presentation of such evidence would require as well as the danger of confusion to the jury. *See United States v. Scheffer*, 523 U.S. 303, 314 (1998) (noting that "collateral litigation prolongs criminal trials and threatens to distract the jury from its central function of determining guilt or innocence").  The trial court had legitimate concerns that establishing the quality of the marijuana may have resulted in a "minitrial" that would have unduly complicated the matter. Andrade is thus not entitled to relief on this claim.

C.    <u>Failure to Release Juror Information/Evidentiary Hearing</u> (Ground Three/Docket No. 45)

Andrade next contends that the trial court erred in refusing to grant a continuance and provide juror identifying information after he learned that one of the jurors concealed the fact that she had been married to a drug dealer and stated to others that it could have been her killed at the Valero station.  The Court of Appeal provided the following background to this claim:

> The jury returned guilty verdicts on June 13, 2006.  The matter was set for sentencing on July 14.  However, on July 14, defense counsel informed the court he had not received the probation report in a timely fashion.  He also requested a continuance to investigate juror misconduct.  Counsel indicated his investigator had telephone numbers and addresses for eight of the jurors and had been able to contact two of them.  He explained his reason for contacting the jurors was to explore potential inconsistencies in the verdicts, in particular the contrast between the guilty verdicts and the not true findings on the special circumstances.  The court granted a continuance of one week, to July 21, to allow [Andrade] to review the probation report.  The court further indicated that, if grounds exist for a new trial, such a motion should be filed by the next hearing.

17

Prior to the July 21 sentencing hearing, [Andrade] filed a request for disclosure of juror addresses and telephone numbers.  In support of the request, [Andrade] submitted summaries of interviews with three jurors.  One juror indicated she had been the lone "holdout" juror at a time during deliberations when the jury informed the court it was deadlocked.  She indicated that while she agreed there had been a murder, she was not sure it had occurred in the course of a robbery.  However, "[a]fter the judge explained that they could only deliberate based on the evidence presented not the lack of evidence[,][s]he made her decision that the robbery occurred before the murder based on the evidence provided . . . ."  The juror explained she found the special circumstance had not been proven because [Andrade] "did not know that a gun was going to be used."

Another juror indicated the one holdout juror was not sure there had been a robbery because she did not know whether the marijuana was taken from the victim before or after the murder.  This juror further indicated they did not find the special circumstance proven because [Andrade] did not know a gun would be used.

The third juror concurred that there was one holdout juror who later changed her mind.  However, this juror further indicated: "After deliberating another day the 'not guilty' juror said she had been married to a drug dealer and had gone out on runs with him.  She stated that 'It could have been her.'"  The juror took this to mean the holdout juror was suggesting the holdout juror could have been killed in a similar situation.

The trial court ultimately concluded the defense showing was insufficient to warrant disclosure of juror identifying information and denied the motion.

*Andrade*, 2008 WL 1813118, at *6-7.

Under California law, a juror has an absolute right to refuse to discuss deliberations or the verdict with anyone, and juror identifying information in a criminal case must be sealed upon the recording of a jury's verdict, absent further order of the court.  *See* Cal. Civ. Proc. Code §§ 206(a), 237(b).  A defendant may, however, petition the court for access to juror identifying information "necessary for the defendant to communicate with jurors for the purposes of developing a motion for new trial or any other lawful purpose."  *Id.* § 206(g).  The petitioner in such instance must make a *prima facie* showing of good cause for the release of juror information.  *See id.* § 237(b); *see also People v. Santos*, 55 Cal. Rptr. 3d 1, 9 (Cal. 2007) (discussing showing required to release juror information).

18

Here, even assuming that the trial court erred in applying California's statutory law

governing the unsealing of juror information, Andrade is not entitled to relief as, again, federal

habeas corpus relief "does not lie for errors of state law." *Lewis*, 497 U.S. at 780; *Estelle*, 502

U.S. at 68.  Thus, to the extent Andrade contends that the trial court erred in applying

California's law regarding the unsealing of juror information, his claim is not cognizable on

federal habeas review.  And, indeed, there is no reason to believe that the state courts erred in

applying California's law regarding the release of juror information.  As the Court of Appeal

explained:

> [Andrade's] showing established, as most, that one holdout juror was eventually
> convinced to change her mind after being directed to concentrate on the evidence
> presented, rather than what was not presented. [Andrade's] showing suggested that the
> not true finding on the special circumstance was not based on a compromise but on a
> conclusion that [Andrade] was not aware Perez had brought a gun to the Valero station.
> Finally, as to the holdout juror's revelation that she had been married to a drug dealer,
> [Andrade] fails to establish that she failed to reveal this fact during voir dire.  The record
> does not include a transcript of the jury voir dire, and it was [Andrade's] duty to provide
> this court with an adequate record to resolve the issues raised on appeal.  At any rate,
> [Andrade] ignores the fact that this was the only juror who, at least initially, voted in his
> favor.  Finally, that juror, like the others, showed leniency by giving [Andrade] the
> benefit of the doubt that he did not know Perez was armed.
>     Review of a decision to deny a defendant's request for disclosure of juror
> identifying information is under the abuse of discretion standard.  Here, because
> [Andrade] failed to establish good cause for disclosure of juror identifying information,
> and because his request for a continuance was premised on his having additional time to
> contact jurors, the trial court did not err in denying the request.

*Andrade*, 2008 WL 1813118, at *7-8 (citations omitted).

Moreover, the United States Supreme Court has never recognized a constitutional right to

have jury information unsealed after the jury reaches its verdict.  To the contrary, the Supreme

Court has refused to require intrusive inquiries into jurors' lives or deliberations even when

evidence of misconduct exists.  *See Tanner v. United States*, 483 U.S. 107, 128 (1987) (holding

that lower court's refusal to conduct evidentiary hearing regarding juror's use of narcotics did not violate defendant's Sixth Amendment right to fair and impartial jury because other safeguards, such as voir dire and observations of fellow jurors, sufficiently protected defendant's right).  In any event, because the Supreme Court has never recognized the right to have juror information unsealed, this Court does not find that the state courts' decision rejecting Andrade's claim involved an unreasonable application of clearly established Supreme Court precedent.  *See Carey*, 549 U.S. at 76.

Furthermore, Andrade's underlying juror misconduct claim is foreclosed by clearly established Supreme Court law.  As the Supreme Court has long held, juror testimony impeaching a verdict is inadmissible.[2]  *Tanner*, 483 U.S. at 116-27 (discussing prohibition on jury testimony to impeach verdict).  The only arguably relevant exception to the prohibition on using juror testimony to impeach a verdict is testimony involving the impact of extraneous information or matters on the jury's verdict.  *See* FED. R. EVID. 606(b)(1);[3] *Mattox v. United*

---

[2]     The rationale for this rule is the protection of jury verdicts which "can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding.  Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict." *Tanner v. United States*, 483 U.S. 107, 119-20 (1987) (citations omitted).

[3]     That rule provides:

During an inquiry into the validity of a verdict or indictment, a juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment.  The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

FED. R. EVID. 606(b).

*States*, 146 U.S. 140, 149 (1892) (testimony of jurors describing how they heard and read prejudicial information not admitted into evidence was admissible to impeach verdict because testimony involved extraneous influence on jury's verdict); *cf. Tanner*, 483 U.S. at 118 (post-verdict juror testimony regarding another juror's use of alcohol inadmissible to impeach verdict because testimony pertained to internal matters).  Here, however, the purported instance of juror misconduct does not involve the introduction of extraneous matters into the jury's deliberations.  Consequently, habeas relief is not warranted as to this claim.

At Docket No. 45, Andrade additionally moves for this Court to conduct an evidentiary hearing on this claim.  A district court may not hold an evidentiary hearing on a claim for which a petitioner failed to develop a factual basis in state court unless the petitioner shows that: (1) the claim relies either on (a) a new rule of constitutional law that the Supreme Court has made retroactive to cases on collateral review, or (b) a factual predicate that could not have been previously discovered through the exercise of due diligence, and (2) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact finder would have found the petitioner guilty of the underlying offense.  28 U.S.C. § 2254(e)(2).

Where the failure to develop the factual basis for the claim in the state court proceedings is not attributable to the petitioner, to receive an evidentiary hearing, the petitioner must make a colorable claim for relief and meet one of the factors set forth in *Townsend v. Sain*, 372 U.S. 293 (1963).  *Insyxiengmay v. Morgan*, 403 F.3d 657, 670-71 (9th Cir. 2005).  In *Townsend*, the Supreme Court concluded that a federal habeas petitioner is entitled to an evidentiary hearing on his factual allegations if: (1) the merits of the factual dispute were not resolved in the state

hearing; (2) the state factual determination is not fairly supported by the record as a whole;

(3) the fact-finding procedure employed by the state court was not adequate to afford a full and

fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material

facts were not adequately developed at the state-court hearing; or (6) for any reason it appears

that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.  *Id.* at

670 (quoting *Townsend*, 372 U.S. at 313), *overruled in part by Keeney v. Tamayo-Reyes*, 504

U.S. 1 (1992).

      As discussed above, Andrade has failed to assert a colorable claim for relief.  *See Bashor*

*v. Risley*, 730 F.2d 1228, 1233 (9th Cir. 1984) (holding an evidentiary hearing is not required on

issues which can be resolved on the basis of the state court record).  Because he does not cite to

new laws or underlying facts that were not developed on the record before the state courts with

respect to this claim, he has also failed to satisfy his burden of proof under 28 U.S.C.

§ 2254(e)(2).  Moreover, the restrictions under Federal Rule of Evidence 606(b) discussed above

preclude this Court from questioning jurors as to the internal mental processes by which the

verdict was rendered.  *See, e.g.*, *United States v. Bussell*, 414 F.3d 1048, 1054-55 (9th Cir. 2005)

(agreeing with district court that juror declaration regarding juror speculation that co-defendant

had pled guilty were inadmissible under Rule 606(b) and that, therefore, no evidentiary hearing

or new trial was warranted).  Andrade's request for an evidentiary hearing must therefore also be

denied.

D.      Corroboration of Accomplice Testimony(Ground Five)

Finally, Andrade claims that the evidence was insufficient to support his convictions because the primary evidence against him came from an accomplice whose testimony was not sufficiently corroborated.  At trial, Moyo testified about meeting Andrade and the others at a park, planning to rob a drug dealer, and driving to the Valero station.  He testified that Andrade borrowed his cell phone to call the victim and that Andrade and Perez went to meet the victim.  He further testified that, after hearing shots, Andrade and Perez ran back to the car where he heard Andrade say to Perez, "I think you killed him," and Andrade divided the stolen marijuana among them.  The Court of Appeal rejected Andrade's claim, reasoning that Andrade's own words sufficiently corroborated Moyo's testimony:

> In the present matter, there is ample corroborating evidence connecting [Andrade] with the crime through [Andrade's] own statements.  [Andrade] was interviewed by police on two occasions immediately after the murder.  In the first interview, [Andrade] initially denied being at the scene at the time of the shooting and denied any involvement whatsoever.  Later, he admitted he might have been at the Valero station that evening, but denied being in the car with the others.  In a second interview, the next day, [Andrade] admitted he was with the others in the car, had called the victim to arrange a meeting, and met with the victim at the Valero station.  The only thing [Andrade] did not admit was that they intended a robbery.  He claimed instead that he was there only to buy marijuana and walked away when he found the marijuana was of low quality.
>
> Thus, [Andrade] connected himself with the crime by putting him with the victim at the time of the murder.  Although [Andrade] claimed he walked away just before shots were fired, there is no requirement that the corroborating evidence support each element of the crime.  In addition, [Andrade's] initial denials of involvement implied a consciousness of guilt and constituted further corroborating evidence.  Thus, as they say, [Andrade] cooked his own goose when he tried to talk his way out of the mess he helped to create.  Moyo's testimony, as corroborated by [Andrade] himself, was sufficient to support the convictions.

*Andrade*, 2008 WL 1813118, at *9-10.

Under California law, uncorroborated accomplice testimony cannot support a criminal conviction.  CAL. PENAL CODE § 1111.  As the Court of Appeal explained when rejecting Andrade's claim on direct appeal:

> Penal Code section 1111 requires corroboration of accomplice testimony.  It reads in relevant part: "A conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof . . . ."  The purpose of this corroboration requirement is "to ensure that a defendant will not be convicted solely upon the testimony of an accomplice because an accomplice is likely to have self-serving motives."
>
> "To corroborate the testimony of an accomplice, the prosecution must present 'independent evidence,' that is, evidence that 'tends to connect the defendant with the crime charged' without aid or assistance from the accomplice's testimony.  [Citation.] Corroborating evidence is sufficient if it tends to implicate the defendant and thus relates to some act or fact that is an element of the crime. [Citations.]  '"[T]he corroborative evidence may be slight and entitled to little consideration when standing alone." [Citation.]'"  However, while corroborating evidence need only be slight, "it is not sufficient to merely connect a defendant with the accomplice or other persons participating in the crime.  The evidence must connect the defendant with the crime, not simply with its perpetrators."

*Andrade*, 2008 WL 1813118, at *9 (citations omitted).

However, the United States Supreme Court has held that "there is no absolute rule of law preventing convictions on the testimony of accomplices if juries believe them."  *Caminetti v. United States*, 242 U.S. 470, 495 (1917); *see United States v. Necoechea*, 986 F.2d 1273, 1282 (9th Cir. 1993) ("The uncorroborated testimony of an accomplice is sufficient to sustain a conviction unless it is incredible or insubstantial on its face.").  "When we look at the requirements of procedural due process, the use of accomplice testimony is not catalogued with constitutional restrictions."  *United States v. Augenblick*, 393 U.S. 348, 352 (1969).  Therefore, the requirement of California Penal Code § 1111 that "'a conviction cannot be had upon the testimony of an accomplice unless it be corroborated' is a matter of state law, which does not

implicate a federal constitutional right" and cannot be the basis of federal habeas relief. *Barco v. Tilton*, 694 F. Supp. 2d 1122, 1136 (C.D. Cal. 2010).

As the Ninth Circuit has explained, California's statutory law prohibiting convictions based solely on uncorroborated accomplice testimony is only a state law rule: it is not required by Constitution or federal law. *See Laboa v. Calderdon*, 224 F.3d 972, 979 (9th Cir. 2000). Thus, because Andrade's claim is grounded in the state law requirement that accomplice testimony be corroborated, he can show no constitutional violation based on the alleged inadequate corroboration. *Takacs v. Engle*, 768 F.2d 122, 127 (6th Cir. 1985) ("If uncorroborated accomplice testimony is sufficient to support a conviction under the Constitution, there can be no constitutional right to instruct the jury that it must find corroboration for an accomplice's testimony."); *see also United States v. Fritts*, 505 F.2d 168, 169 (9th Cir. 1974) (holding on direct review that trial court's failure *sua sponte* give cautionary instruction on accomplice testimony did not warrant reversal). Accordingly, Andrade cannot prevail on this claim.

## V. CONCLUSION AND ORDER

Andrade is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Motion for an Evidentiary Hearing at Docket No. 45 is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain

a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: February 11, 2016.

/s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge